## Alto Chambliss, Plaintiff-Appellant, v. Walker Construction Company, Inc., Defendant-Appellee.

### Gen. No. 10,481.

Fourth District.

March 6, 1964.

Kenneth A. Green, of Mattoon (Thomas J. Logue, of counsel), for appellant.

Earl S. Hodges, of Springfield (Samuel C. Patton, of counsel), for appellee.

SMITH, J.

Plaintiff filed his suit charging the defendant with common law negligence in the maintenance of its trucks which resulted in a back injury to the plaintiff. At the close of all the evidence, the Court directed a verdict in favor of the defendant, entered an appropriate judgment, and plaintiff appeals.

Huckaba Construction Company was a general contractor engaged in road building. Three of the trucks

used in the enterprise, together with their drivers, were leased from the defendant, Walker Construction Company, for $10 per hour. Walker hired, paid and discharged the drivers, repaired and greased the trucks, provided the fuel, paid the taxes on them and stored them at night. Huckaba directed the movements of the trucks and drivers after they reached the job site. Plaintiff was an employee of Huckaba engaged in dumping the trucks. Both Huckaba and Walker operated under the Illinois Workmen's Compensation Act.

These trucks were metal dump bed, tandem axle truck with a hydraulic hoist. Their cargo was sand, gravel, and concrete. The bed was separated into compartments by batch or divider boards which kept the various materials segregated. The truck would back up to the mixer and the driver then elevated the bed so the material was discharged by gravity. At the back of the truck was the plaintiff—the dump man. Each batch or divider board had an individual lever, pulley and rope. By pulling the rope or pushing the lever, the batch board would trip and release the material. Plaintiff had had previous experience as a dump man. As abstracted, the plaintiff described the occurrence events as follows:

". . . These batch trucks were loaded with sand, gravel and cement. As I would dump the truck I would stand by the side of the truck. I would be standing on the ground. The batch truck is just like a dump truck, only it has boards in it, batch boards, and some of the trucks have three batches in them and some have four batches in them. These batches are kept separated and apart by batch boards, and there is a lever. When you get ready to dump one of those batches I pushed on the lever to release it. The lever was hanging down at the side of the truck. The bottom of the

288

lever would strike me at about the waist. When I would lift the lever, and had to go up with it. Before I started the lever, I would be in a standing position. The lever would be moved toward the back of the truck. During these six days I had had occasion to dump other loads. The truck being used belong to Walker, Huckaba and Jordan. I don't know which truck it was. When this lever stuck it was about as high as my head, and my arms were up over my head. I had moved the lever prior to the time when it stuck. The bed was down before I backed him in, and I always break the boards loose before he raises the bed, but that time it didn't come loose, and the bed was already up, and I reached up and shoved on it, pushed up on it. It didn't move. At that time I had a sharp pain in my back. After just about a minute it felt like a bunch of needles was jabbing me in the back. It felt like an electric shock went through me when I felt that pain in by back. I still have the pain. . . ."

Four witnesses for the defendant testified that the trucks had ropes and pulleys. Plaintiff, in rebuttal, testified as follows:

". . . On the particular truck at the time of my accident there were ropes attached to some of the levers of that truck. There was no rope attached to the lever that I got hurt on. I do not recall that there was any pulley on that particular lever that would be connected with the lever in any way."

"Cross-Examination

Question: Mr. Chambliss, did you talk to your counsel about a rope before you got on the witness stand just now?

Answer: About what, sir?

Question: About a rope on the trucks?

Answer: I did.

Question: Up to this time you have never made any mention on direct examination or anything about ropes, have you?

Mr. Green: We object, that is argumentative.

The Court: No, he may answer the question.

Answer: They was never nothing 'till today brought up about ropes, sir.

Question: You didn't say anything about ropes any time before yourself?

Answer: No, sir."

The first charge of negligence is that the defendant failed to inspect the levers. The only testimony on this question is that of Walker's maintenance man who testified:

". . . I had to check the batch boards of an evening when the drivers came in. They had to satisfy the state man. They were in good shape. The condition of the batch board and the anchor to the batch board and the lever and the rope were kept intact and in good shape. I found them to be that way during the time they were being used on this job. . . ."

He further testified on cross-examination that he "had to see that the rope was there," that, if it wasn't there, "he wouldn't consider the equipment to be in good shape."

The remaining charges of negligence are (b) that the defendant failed to warn the plaintiff that the

290

lever was not in working condition, (c) failed to keep the equipment in good repair and, (d) that defendant knew or should have known that the lever was not working and that plaintiff would attempt to raise the lever and "in all probability would be injured."

In directing a verdict in this case, plaintiff, in effect, asserts that the trial court trespasses upon hallowed ground, that he invades the sanctum sanctorum of the jury and partakes of forbidden fruit. Under our system, these things he may not do.

■ ■ In properly directing a verdict the judge determines as a matter of law that there are no evidentiary facts out of which the jury may construct a necessary ultimate fact essential to recovery. In Watts v. Bacon & Van Buskirk, 18 Ill2d 226, 229, 163 NE2d 425 the guidepost for this determination is stated as follows:

> "Upon motion for a directed verdict for defendant, it is the duty of the trial court to determine whether there was any evidence, together with all reasonable inferences therefrom, tending to support the material allegations of the complaint. In the absence of such evidence, the trial court should grant the motion. (Peters v. Catt, 15 Ill2d 255; Butler v. O'Brien, 8 Ill2d 203; Shevlin v. Jackson, 5 Ill2d 43; Rotche v. Buick Motor Co. 358 Ill 507)."

In applying this rule to the case at bar, we recognize that the questions of negligence and of contributory negligence are ordinarily and preeminently questions of fact for the jury. We recognize that the evidence must be regarded in its aspects most favorable to the plaintiff. We recognize that the trial judge cannot become the 13th juror nor can we. We recognize that we have a question of law on these issues only when reasonable minds in the exercise of fair and honest

judgment upon undisputed facts would reach the same conclusions. So circumscribed, we nevertheless conclude that the trial court properly directed a verdict.

The undisputed testimony is that these trucks were inspected daily, that the plaintiff had some six days' experience with this type of work on this job and a like experience elsewhere, that he had moved the lever in question just before it stuck, that the presence or absence of the rope was visible to all who cared to see, that the purpose of the rope and pulley was to make the operation easier, that the plaintiff had had a previous back injury, that the amount of pressure exerted by him was of his own choice, that he mentioned the absence of the rope to no one until he testified in rebuttal on the day of the trial, that the manner in which he dumped the batch was under his own control or that of Huckaba, his employer, and that Walker had no control over him or his activities. We fail to see in this evidence any act of omission or commission on the part of the defendant which proximately contributes to plaintiff's injury or which reasonable minds could properly denominate as negligence on the part of the defendant.

The rule is well stated in 6 Am Jur Par 317, p 416 Bailments as follows:

". . . If the bailment is a lucrative one, the obligation by which his liability to third persons is tested may include a duty to exercise reasonable diligence or ordinary care to see that the instrumentality is in a reasonably safe condition to avoid injuries to such persons, and it has even been held that he is required, in the exercise of such diligence, to inspect the machine to the end that such danger may not arise, and to make such simple and available tests as to its condition as the intended use would suggest to sensible and right-minded persons. Of course, even under this

view, the bailor is not to be held responsible as a guarantor of the absolute integrity of the machines he lets."

Let us, however, take as facts that there was no rope on the lever in question; that its absence establishes that the truck was not in good repair; that this condition was known or should have been known to the defendant and the defendant knew or should have known that someone using this truck in this condition might or could be injured. If the delivery of this truck to Huckaba in this condition is negligence, then the use of this truck by the plaintiff and Huckaba in this condition is negligence on their part precluding recovery. If known to one, these circumstances were equally well known to all. We think reasonable minds must agree that if the defendant was negligent in delivering this truck in this condition with knowledge of its condition, then the plaintiff is necessarily guilty of contributory negligence in using the truck with knowledge of these same conditions.

We think the rule decisive of this case is stated in Dean v. Ketter, 328 Ill App 206, 65 NE2d 572 as follows:

> "At common law it seems to be well settled, both in bailments for gratuitous use and in lettings for hire, that the bailor cannot be held responsible to a third person for injuries resulting from the bailee's negligent use of the bailed chattel, in the absence of any control exercised by the bailor at the time, or of his own negligence which proximately contributed to the injuries."

We necessarily conclude that there is a total want of any evidence, directly or by reasonable inferences, that the defendant breached a duty to the plaintiff or that plaintiff was in the exercise of due care and caution for his own safety. Other points urged by

the defendant to justify affirmance need not be discussed. The judgment of the Circuit Court of Coles County is affirmed.

Affirmed.

CROW, P. J. and SPIVEY, J., concur.