Francis Huckabee, Plaintiff-Appellee, v. Bell & Howell, Inc., a Corporation, Guy M. Zettler & Co., a Corporation, Defendants, and Safeway Steel Scaffolds Co. of Illinois, a Corporation, Defendant-Appellant.

Gen. No. 50,992.

First District, Second Division.

November 26, 1968.

Rehearing denied January 3, 1969.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (David Jacker, William H. Symmes, John M. O'Connor, Jr., and Jon R. Waltz, of counsel), for appellant.

Barbera and Friedlander, of Chicago (Dom J. Rizzi, A. J. Hardiman, and Donald G. Zerwer, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

The plaintiff, Francis Huckabee, brought suit against Safeway Steel Scaffolds Co. of Illinois, Bell & Howell, Inc., Guy M. Zettler & Co., and J. Emil Anderson & Son, Inc. to recover damages for personal injuries that he had sustained. J. Emil Anderson & Son, Inc. paid the sum of $10,000 to plaintiff, received in exchange a covenant not to sue, and was voluntarily dismissed from the action. Guy M. Zettler and Bell & Howell were also dismissed by plaintiff. The plaintiff charged Safeway Steel Scaffolds, hereinafter referred to as defendant, with violation of the Structural Work Act (Scaffold Act) and with common-law negligence. The defendant's motions for a directed verdict at the end of plaintiff's case and at the close of all the evidence were denied, and the jury returned a verdict in favor of plaintiff and against the defendant in the amount of $80,000 and judgment was entered thereon. Defendant's post-trial motions were also denied, and defendant brings this appeal.

Plaintiff was injured as a result of an accident which took place on Friday, March 29, 1957. At the time of the accident, plaintiff, a painter for the Guy M. Zettler & Co., was engaged in painting the Bell & Howell plant

located at 7100 McCormick in Chicago. Anderson was the general contractor supervising the construction of an addition to the plant, and Zettler was the painting subcontractor.

Plaintiff and his co-worker Emery Nissen were engaged in painting certain pipes and steel structures below the ceiling. They were able to reach these pipes by use of a scaffold tower fifteen feet above the floor. This scaffold was constructed of tubular steel members and was mounted on four wheels or casters so that it could be rolled from place to place. The four wheels were equipped with lever-operated brakes to prevent the scaffold from rolling. The brake and wheel comprised a single unit, which had a four-inch stem that was inserted into the tubular, vertical scaffold member.

The component parts of the scaffold had been brought to the job site in January 1957 by a Zettler employee in one of its trucks. The disassembled parts were then assembled into five separate scaffolds of the same type by the Zettler employees. All five scaffolds remained on the job through April 4, 1957, when the job was completed. Nissen and another employee of Zettler, Lang Ward, who did not testify, had disassembled the scaffold involved in the occurrence, moved the parts to the room in which the accident happened, and there reassembled the parts into a single scaffold. Nissen and Ward had used the scaffold uneventfully for two days in March.

Plaintiff had begun working at the Bell & Howell job in January, but was sent to another site for a period of time. On Thursday, March 28, the day before the accident, the plaintiff and Nissen began working together on the reassembled scaffold. On that day, the scaffold moved twice while they were using it. After it moved the first time, both men descended, adjusted the brakes and found them working well. Nissen returned to the top of the scaffold when it moved again and one of the wheels came off. The plaintiff held up the corner of the scaf-

fold from which the wheel came off while a man who was sweeping the floor reinserted the wheel; this man did not testify. Afterwards, Nissen and the plaintiff resumed work on the same scaffold because "it seemed to be fine" after they checked it, and plaintiff testified that he did not know of any other scaffolds in the area. The scaffold was always on a level floor.

They used the same scaffold all next morning, the day of the accident, without incident. After lunch they checked the brakes and resumed work. About ten minutes later, the scaffold tipped and then fell to the floor. Nissen managed to hang on to a sprinkler pipe hanging from the ceiling but plaintiff fell to the concrete floor with the scaffold landing on top of him. As a result, he sustained severe and permanent injuries, including a fractured jaw and fractures of both wrists.

Dominic Pomponio, an employee of Bell & Howell, testified that, although he did not witness the accident, he heard the crash and ran to the scene. He saw the scaffold lying on the floor with a caster missing from one of the corners. He also testified that he had seen two painters working on a scaffold the day before the accident, and observed them moving the scaffold by pulling themselves along on the overhead steelwork; however, he did not know whether plaintiff was one of the painters.

Plaintiff denied that he ever moved the scaffold by use of the beams along the ceiling. He stated that he and Nissen moved the scaffold by descending, disengaging the brakes on the wheels, and pulling the scaffold to the next position. Plaintiff and Nissen also testified that they could not explain why the scaffold fell. The scaffold involved in the accident was used without incident until the job was completed about three days after the accident.

During the year of 1957, defendant was in the business of leasing component parts of scaffolds, and Zettler was one of its customers. On the date of the accident, defendant had component parts for one scaffold leased to Zet-

434

tler under an agreement dated February 14, 1957. Although generally the defendant inspected the scaffold parts before leasing them to Zettler, Peter Gilbertson, vice-president of the defendant company, testified that he had "no way of knowing" whether this particular scaffold was inspected. He further testified that there was no provision in the agreement with Zettler for adjustment of the equipment on the job, while it was out of defendant's possession. He also testified that defendant had no contact with the component parts from the time they were leased until they were returned; that the parts were not leased for any particular job; and that defendant would not be able to determine if the component parts were moved from one job to another.

Plaintiff introduced into evidence, without objection, defendant's answers to two interrogatories. The answers stated that defendant was the owner of the scaffold involved in the occurrence, and that the defendant had leased the scaffold in question to Zettler. Also at trial, Gilbertson testified that a photograph of a scaffold which was introduced in evidence was the same type of scaffold that was furnished by defendant to Zettler, and that if the component parts were assembled it would comprise a structure similar to that shown in the photograph. He further testified that the parts leased to Zettler were returned to defendant on May 6 without any comment regarding their condition, and that these parts were in good condition when returned to defendant.

On this appeal, defendant urges several grounds for reversal. One of his contentions is that there is no liability as a matter of law under the Scaffold Act, Ill Rev Stats 1965, c 48, §§ 60–69, because it was not shown that defendant was in charge of the work.

In the instant case, the trial court concluded that the supplier of a defective scaffold is liable under the Scaffold Act whether or not he was in charge of the work. Accordingly, the court rejected defendant's tendered in-

struction that plaintiff had the burden of proving that defendant was in charge of the work. In refusing this instruction the trial judge stated that if he thought that defendant had to be in charge of the work to be liable under the Act, he would have granted defendant's motion for a directed verdict.

■ It is now conceded by plaintiff and is well settled that to be liable under the Illinois Scaffold Act one must be in charge of the work. Gannon v. Chicago, M. & St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785 (1961); Larson v. Commonwealth Edison Co., 33 Ill2d 316, 211 NE2d 247 (1965); Vykruta v. Thomas Hoist Co., Inc., 75 Ill App 2d 291, 221 NE2d 99 (1966). While refusal by the court of the tendered instruction would require remandment for a new trial, we believe it necessary to discuss whether as a matter of law defendant is liable under the Scaffold Act.

Defendant leased component parts of a scaffold to plaintiff's employer Zettler. On this appeal, plaintiff cites certain portions of the leasing agreement between defendant and Zettler to show that defendant could have been in charge of the work. The record is unclear as to whether the leasing agreement was admitted into evidence at trial, but for the purposes of this opinion, we will consider the entire agreement. The portions of the agreement relied on by plaintiff provide that the lessee could not move the equipment from one job to another without the prior written consent of the lessor; that the lessee must use the equipment in compliance with the law and with the instructions of the lessor; and that the lessor had the right of free access to the leased equipment for the purpose of inspecting it, observing its use and operation, or determining the nature and extent of its use.

■ In Vykruta v. Thomas Hoist Co., Inc., supra, the court set the standards that must be met before one can be liable under the Scaffold Act, stating that "to be liable a defendant must be in charge of the work; he must

have some direct connection with the construction before he can be deemed in charge of the work; he can perpetrate a knowing violation only if he is directly connected with the operation . . . . The mere furnishing of equipment does not render one in charge of the construction or that part of the construction in which the equipment is used." At p 301.

█ In applying these standards to the present case, it is clear that defendant had no direct connection with the work so as to have been considered in charge of the work. Consequently, he cannot be liable for damages under the Scaffold Act. The leasing agreement did not provide for adjustment of the equipment by defendant while it was out of the premises of Safeway. Defendant had not leased the component parts for use at any particular job site, nor did it have any contact with the parts from the time they were leased until they were returned. Moreover, the scaffold upon which plaintiff was working when injured was assembled on the job site by employees of Zettler.

Defendant's leasing agreement with Zettler is distinguishable from and falls short of the agreements in Larson v. Commonwealth Edison Co., 33 Ill2d 316, 211 NE2d 247 (1965), and in Miller v. DeWitt, 59 Ill App2d 38, 208 NE2d 249 (1965), affirmed 37 Ill2d 273, 226 NE2d 630 (1967). In both of these cases, the agreements pertained to specific construction jobs in which the plaintiffs were injured. In the instant case, the component parts were not to be used for any particular job. In the Larson case, the defendant prepared the contracts, the work plan, the structural designs, and the specification used in the construction work. In the Miller case, the defendant, an architect, was to prepare preliminary studies, working drawings, specifications, large scale and full size detail drawings for architectural, structural, plumbing, heating, electrical and other mechanical work and he also was to supervise the work to guard against any defects or de-

ficiencies of the contractors. No such control is granted to defendant in the instant case, and since the parts were not rented for any specific job, no control was granted to defendant which would place it in charge of the work at the Bell & Howell site. The clauses in the leasing agreement permitting Safeway to prevent certain activities with the component parts only allow it to protect the leased parts from loss, theft or misuse; they do not put defendant in charge of the work. We therefore find that defendant was not in charge of the work and is not liable under the Illinois Scaffold Act.

The defendant also contends that plaintiff failed to make out a cause of action for common-law negligence as a matter of law, and that the trial court erred in not granting the defendant's motion for a judgment notwithstanding the verdict. It argues that plaintiff failed to show that defendant was negligent. Defendant also contends that as a matter of law plaintiff was guilty of contributory negligence and assumed the risk of the accident.

In Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967), our Supreme Court held that whether a verdict should be directed, whether a judgment notwithstanding the verdict should be granted and whether negligence is a question of law should all be decided by the same standard. If "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand," a question of law is created. And it is immaterial whether we believe that another conclusion is more reasonable. Seeds v. Chicago Transit Authority, 409 Ill 566, 101 NE2d 84 (1951). Applying those principles to the instant situation, we find that, when the evidence is viewed in a light most favorable to plaintiff, the issues of negligence and contributory negligence become questions for the triers of fact.

■ We agree with the defendant that the duties of a bailor to a third person are applicable, since under the agreement between Zettler and defendant, the latter became a bailor for hire of the scaffold parts. The duties of a bailor to third persons for negligence are clearly defined in two decisions by this court. Chambliss v. Walker Const. Co., 46 Ill App2d 287, 197 NE2d 83 (1964); Witt v. John Hennes Trucking Co., 49 Ill App2d 391, 199 NE2d 231 (1964). These cases are in agreement with the Restatement of Torts (1965) c 14, § 388. Under these cases, a bailor is liable to a third person for injury if (1) he supplied the chattel in question; (2) the chattel was defective at the time it was supplied; (3) the defect could have been discovered by a reasonable inspection; and (4) the defect was the proximate cause of the injury.

■ Defendant maintains that it did not supply the scaffold involved in the accident, relying on testimony at trial that on the date of the accident, March 29, 1957, defendant had the component parts of only one scaffold on lease to Zettler, and these parts had been delivered in February, 1957, whereas the scaffolding from which plaintiff fell was delivered to the job in January, 1957. However, defendant answered two interrogatories by stating that defendant was the owner of the scaffold involved in the occurrence, and that defendant had leased that scaffold to Zettler. Moreover, defendant's vice-president testified that the scaffold in question was returned to defendant in May, 1957. In view of the conflicting evidence, whether defendant supplied the scaffolding remains a question for the trier of fact.

■ Defendant also maintains that the scaffolding components were not defective at the time that they were supplied to Zettler, and contends that plaintiff did not present any evidence tending to show that a defect existed. We agree that there is no direct proof of any defect; however, direct evidence is not required if there is a

439

reasonable basis from which a jury could have drawn the inference that the scaffold was defective. Thomas v. Smith, 11 Ill App2d 310, 137 NE2d 117 (1956). See also Caviness v. Hamblen, 324 F2d 939 (7th Cir 1963). A similar situation existed in Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847 (1950), where plaintiff failed to present direct evidence of any defect in a vaporizer which allegedly caused a fire. The Supreme Court stated:

> "The key point of the controversy is appellants' contention that the fact of defect must be proved before it may be inferred that such defect caused the fire and the injury complained of. There being no eyewitnesses, the determination of this contention must be found in the circumstances revealed by the evidence, if at all . . . . It is clear from the evidence that a properly constructed vaporizer could not melt itself down and it would seem inescapable that if the vaporizer did in fact melt by the application of its own heat, it was defective." At p 131.

Thus, the court held that, under the circumstances of that case, the fact of a defect may be inferred from all of the evidence. Although the facts of that case and the one at bar are different, the principles involved are the same. In both cases plaintiff did not present any direct evidence of a defect in the product causing the injury. And in the instant case, as in Lindroth, supra, if plaintiff's testimony is taken as true, an inference of a defect in the scaffolding from the accident itself is reasonable. The floor upon which the scaffold was placed was level, ruling out any possibility of the scaffold rolling; and after the accident a witness noticed that one of the wheels had come out. In addition, plaintiff testified that, the day before the accident, the scaffold moved unexplainably, and that on the same day one of the wheels came out of the tubing. An inference that one of the wheels was old and worn

out is not unreasonable. Nor can we as a matter of law accept defendant's argument that the time between the delivery of the scaffolding components and the accident would make a defect highly improbable.

Defendant also argues that the components were not defective when delivered. However, defendant's vice-president testified that, although generally the scaffolding components were inspected before delivery, he did not know whether these particular components were inspected. Thus, we conclude that plaintiff has presented sufficient evidence as to defendant's negligence to become an issue of fact.

Defendant also contends that the plaintiff, in continuing to use the scaffold after the events of the day prior to the accident, assumed the risk of the accident and also was guilty of contributory negligence as a matter of law. In Illinois, the doctrine of assumption of risk in negligence cases is limited to those involving the master-servant relationships. Hammer v. Slive, 27 Ill App2d 196, 169 NE2d 400 (1960). Consequently, the doctrine has no application in the instant case.

The plaintiff testified that after the scaffold had been fixed the day prior to the accident, it worked fine. He also testified that he checked the scaffold the morning of the accident, and it was functioning satisfactorily, and also that he was unaware that there were other scaffolds available in the building. Under Pedrick, supra, contributory negligence was a question of fact for the jury.

The final issue we must determine is whether to invoke the presumption that a general verdict is based upon the evidence which supports the valid counts or issues. If we invoke this presumption, we must affirm; otherwise we must reverse and remand. This problem was discussed in Sims v. Chicago Transit Authority, 7 Ill App2d 21, 129 NE2d 23 (1955). In that

441

<br/>

case, the court concluded that "unless the reviewing court can say that on retrial the result could not be otherwise, the cause must be remanded toward the end that the party bringing error may secure substantial justice. Where the reviewing court can see the case has been fairly tried, and that the judgment is clearly right upon the facts, and that consequently another trial must necessarily result the same way, it will not reverse on the ground that an erroneous issue has been submitted to the jury. Quite a different rule prevails where the case is a close one on the facts. In such a case where the evidence is about evenly balanced, the reviewing court will reverse for any substantial error in the trial court on a material question that may have turned the scale in favor of the successful party." At p 29.

 The submission of the Scaffold Act count to the jury was substantial error. The proof required for that count is of a different degree and nature than the proof required for common-law negligence; for example, contributory negligence is not a defense under the Scaffold Act. Brackett v. Osborne, 44 Ill App2d 441, 195 NE2d 8 (1963). We cannot say with any degree of certainty that, upon the evidence presented, the jury would return a verdict based upon common-law negligence. Thus we must reverse the judgment and remand the cause for a new trial on the issue of common-law negligence.

Judgment reversed and cause remanded.

BURKE, P. J. and LYONS, J., concur.