**William T. Elizer, Plaintiff-Appellee, v. Louisville & Nashville Railroad Company, a Corporation, Defendant-Appellant.**

Gen. No. 69–22.

Fifth District.

August 27, 1970.

 

Walker & Williams, of East St. Louis (Edward G. Maag, of counsel), for appellant.

McGlynn & McGlynn, of East St. Louis (James McGlynn, of counsel), for appellant.

GOLDENHERSH, J.

Defendant, Louisville & Nashville Railroad Company, appeals from the judgment of the Circuit Court of St. Clair County entered upon a jury verdict in the amount of $130,000.00.

Plaintiff's cause of action is brought under the Federal Employers' Liability Act (45 USCA 51 et seq.) and arises out of an occurrence on December 24, 1966 while he was employed as a switchman in Nashville, Tennessee.

Defendant's first contention is that the verdict is so grossly excessive as to require the granting of a new trial.

Plaintiff was injured when his right leg was immersed in scalding hot water to a point just above his knee. He was taken to a hospital where he was confined until February 1, 1967. He had first and second degree burns on his right leg from the ankle to the junction of the lower and middle third of his thigh. He developed areas of secondary infection. The burns were painful and he was given Demerol and later, Empirin or Darvon. During the period of hospitalization he was treated by defendant's district surgeon.

Following discharge from the hospital he was seen at the surgeon's office eight times. On March 3, 1967, the surgeon recommended plaintiff enter the hospital for skin grafting.

Plaintiff rejected the services of defendant's surgeon and consulted a plastic surgeon. He was hospitalized and on March 13, 1967, extensive plastic surgery was performed on his leg. He was bedfast until April 10, 1967, and was discharged from the hospital on April 4. He was seen by the doctor on May 8, June 19, and on August 3, 1967, was released for work. He returned to the surgeon's office on September 7, and some areas of graft were still draining. He was hospitalized and on October 2, 1967, corrective surgery was performed. He was discharged on October 6th. He was seen by the doctor on November 30, 1967 and again on February 2, 1968. He was having difficulty with numbness and pain in the leg, particularly when he worked outside in cold weather.

On several occasions when seen by the plastic surgeon plaintiff complained of weakness in the ankle and difficulty in walking on uneven surfaces because of its weakness and tendency to turn. He was referred to an orthopedic surgeon for X-ray and examination.

The doctor stated that to a reasonable degree of medical certainty it was his opinion that the weakness of the ankle and its tendency to turn might be a permanent condition, that the injury could cause impairment of his ability to perform the duties of a switchman, was causing pain now as well as in the past, and may well cause pain and discomfort in the future, possibly requiring further medical attention and treatment.

At the time of the injury plaintiff was 24 years of age. He received a high school diploma upon successful completion of a General Education Test. His seniority as a switchman dates from November 12, 1963. His earnings in 1966 were in excess of $7,000. In 1967, he earned $2,200. As of the date of trial, May 22, 1968, his earnings in 1968 were less than $500.00.

The assessment of damages is a jury function and our conclusion upon careful examination of the record is best described in the following statement found in Lau

v. West Towns Bus Co., 16 Ill2d 442, 158 NE2d 63, at page 453:

> "We are not unmindful of our obligation to carefully scrutinize the record to determine whether the amount of the verdict is so large as to indicate passion and prejudice. This we have done, and we conclude from the evidence that although the verdict may well be in excess of the amount which the judges of this court would have allowed if they had heard the evidence and made the original determination, yet we do not believe that it is so excessive as to show passion or prejudice.
>
> "We therefore conclude that the verdict and judgment below are correct and the judgment is affirmed."

Defendant contends it was deprived of a fair trial as the result of misconduct on the part of plaintiff's counsel. Defendant argues that in his direct examination of the plaintiff, plaintiff's counsel "set the stage" for the "character assassination" of defendant's district surgeon. We have examined the transcript and find that only one objection was made during the portion of the interrogation of which defendant complains and it was sustained.

Defendant argues that plaintiff's counsel, pursuing the course of "character assassination" made improper allusion in final argument to a conversation, not in evidence, between the defendant's surgeon and another doctor whom plaintiff had consulted. The record shows the trial court sustained defendant's objection. Defendant complains of other remarks of plaintiff's counsel, to some of which no objections were made.

A detailed discussion of these remarks is of no precedential value nor is it necessary to discuss the authorities cited by the parties. The rule governing review of assignments of error based upon alleged improper argument to the jury is clearly stated in Belfield v. Coop,

253

8 Ill2d 293, 134 NE2d 249. The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial court has performed his duty and properly exercised the discretion vested in him. North Chicago St. R. Co. v. Cotton, 140 Ill 486, 29 NE 899. The attitude and demeanor of counsel and the general atmosphere of the trial are observed by the trial court, and cannot be reproduced in the record on appeal. The trial court is, therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, and unless clearly an abuse of discretion, its ruling should be upheld. Chicago v. Chicago Title & Trust Co., 331 Ill 322, 163 NE 17.

■ Citing cases which hold that a party who calls a witness vouches for, and may not impeach him, defendant argues that since its district surgeon's testimony was adduced by evidentiary deposition in plaintiff's case, plaintiff was barred from criticizing him in final argument which was designed to impeach him. This theory was not the basis of objection in the trial court, and although paragraph 4 of defendant's posttrial motion, by liberal construction, might be deemed to include it, it is raised in this court for the first time in defendant's reply brief, and under the circumstances will not be further considered.

■ Defendant contends the court erred in giving plaintiff's instruction No. 16 because it submitted to the jury the question of damages for future medical care and treatment (IPI 30.06). The record reflects that Dr. Lissner, the plastic surgeon, testified to a reasonable degree of medical certainty that plaintiff might require further medical treatment. Defendant's medical witness testified there was atrophy in the injured leg which should be corrected through therapy and exercise. We have examined the cases upon which defendant relies (Panepinto v. Morrison Hotel, Inc., 71 Ill App2d 319, 218 NE2d 880; Lauth

v. Chicago Union Traction Co., 244 Ill 244, 91 NE 431; Meltzer v. Shklowsky, 321 Ill App 400, 53 NE2d 272) and find them distinguishable in that here, unlike those cases, there is medical testimony to a reasonable degree of medical certainty that future medical treatment might be necessary.

■ Defendant's final contention is that the court erred in giving plaintiff's instruction No. 19 (IPI 34.04) because there is no evidence that plaintiff might suffer future loss of earnings. The testimony of plaintiff's surgeon and plaintiff's testimony of pain, and difficulty with his leg, supply an evidentiary basis for submission of this element of damage to the jury.

We find no reversible error in this record and the judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.