JOSEPH GALLUCCIO *et al.*, Plaintiffs-Appellees, *v.* THE HERTZ CORPORATION, Defendant-Appellant.

(No. 69-124;

Fifth District—September 7, 1971.

Pope and Driemeyer, of East St. Louis, for appellant.

Hoagland, Maucker, Bernard & Almeter, of Alton, (James K. Almeter, of counsel,) for appellees.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This action was brought to recover damages based upon the dual theories of implied warranty and strict liability in tort. There were

originally four plaintiffs. One of the plaintiffs, Galluccio, leased a Ford Econoline Van from the defendant, Hertz Corporation. The remaining three plaintiffs, Richard Cicere, Salvatore Barnetti and Carmelo Di Maria were passengers in the van and were members with Gallucio of a rock and roll band. The group was traveling in the defendant's vehicle from St. Louis, Missouri to Rock Island, Illinois. The plaintiffs were involved in a collision with an automobile driven by a person not a party to this action. The plaintiffs alleged that faulty brakes on the leased vehicle was the proximate cause of the collision.

Trial was held in January and February, 1969, and at the conclusion of the evidence plaintiff was granted leave to file an "Amendment to Complaint" which contained only the theory of strict liability in tort. The jury rendered a verdict for plaintiffs Galluccio, Barnetti and Di Maria. Upon these verdicts the court, on February 3, 1969, entered judgment from which this appeal is taken. Plaintiff Cicere apparently dismissed his count of the original complaint when the "Amendment to Complaint" was filed.

The defendant-appellant, The Hertz Corporation, hereinafter called Hertz, presents the following issues for review by this court. (1) Did plaintiffs' amendment to complaint as amended state a cause of action? (2) Was plaintiff Barnetti, the driver of the vehicle, guilty of negligence as a matter of law and should the special interrogatory finding he was not so negligent be set aside? (3) Were the plaintiffs at the time of the collision engaged in a joint enterprise and should the special interrogatory finding that they were not so engaged be set aside? (4) Is the negligence of Barnetti imputable to plaintiff Galluccio? (5) Is the negligence of Barnetti imputable to plaintiff, Di Maria? and (6) Should the court grant a new trial for the defendant in the case of each plaintiff?

The collision which resulted in this lawsuit occurred on February 12, 1967, at about 6:30 P.M. at the intersection of Route 111 and Hartford Road on what is also known as Madison Avenue in Madison County, Illinois.

Plaintiffs had just finished their musical engagement at a night club in St. Louis. On February 11, 1967, plaintiff Galluccio leased a 1963 Ford Econoline Van from Hertz. The purpose of leasing the vehicle was to transport the group and instruments to their next engagement in Rock Island, Illinois.

The plaintiffs left St. Louis, Missouri, in the Hertz vehicle the afternoon of February 12, 1967, bound for Rock Island, Illinois. They were on their journey until the collision. The plaintiff, Barnetti was driving, plaintiff Galluccio was sitting in the middle of the front seat, plaintiff

Di Maria was sitting on the right seat in the front. Richard Cicere was lying down in the back of the vehicle with the cargo.

At the time of the collision it was dark and the weather was clear. The intersection in question is four lane north-south on Route 111 and two lane east-west on Hartford Road. The intersection is controlled on all corners by stop signs. There is a railroad crossing fifty-eight feet four inches south of the southeast corner stop sign. The southeast corner stop sign controls traffic approaching the intersection from the south.

The plaintiffs were proceeding from the south in a northerly direction on Route 111 in the right-hand lane closest to the shoulder. The other vehicle in the collision was being driven in a southerly direction on Route 111. This second vehicle made a stop at the intersection and proceeded to turn left (to the east) onto Hartford Road. The plaintiffs' vehicle did not stop and struck the right side of the second vehicle. The plaintiffs' vehicle left two skid marks thirty-nine feet six inches long. The skid marks commenced seven feet south of the southeast corner stop sign and continued uninterrupted to the point of impact.

The plaintiffs alleged that the brakes on the leased vehicle were faulty which proximately caused the accident. Plaintiffs' evidence showed that the brakes were last relined some 45,000 miles before the collision. There was also evidence that the master brake cylinder on the vehicle had to be refilled from one-half to three-fourths every four months since December, 1965. The master cylinder was last refilled before the collision of June 10, 1966, some 11,600 miles and eight months before the collision.

Plaintiff Barnetti testified that the brakes failed causing the collision. He stated that as he approached the intersection of the collision, south of the railroad sign, he saw a sign on his left which said something about a stop ahead and he applied his brakes. "I hit my brake, and I got a brake". About twelve or thirteen car lengths from the railroad sign he noticed two car lights ahead of him in an odd position. He stated that it looked as though they were coming up the island which separates the lanes of the highway. He testified that at this time his speed was 45 miles per hour. He observed the railroad sign and a red thing behind the railroad sign. When he was six to eight car lengths from the railroad sign, he again applied his brakes to slow down going over the railroad tracks. This time, however, upon applying the brakes, "there was nothing". The vehicle kept rolling and he started to pump the brakes and tried to shift into second. As he passed over the railroad tracks he testified that he managed to pump up the brakes. When he felt a brake, he gripped the steering wheel hard and kept his foot hard on the brake. The next thing Barnetti recalls is waking up on the ground.

Plaintiff Barnetti further testified that prior to the collision while driving the vehicle he had had difficulty with the vehicle. He said the steering was loose and the brakes were spongy and low. By "spongy" he said he meant the brake pedal was not solid.

A Mr. Donald Matthews used the vehicle last before the plaintiffs. He turned the van in on February 11, 1967. His testimony agreed with Barnetti that the brakes were low, the brake pedal going more than half-way to the floor. He also agreed that the steering was loose and worn.

The van was examined after the accident by a Mr. William Klug on behalf of the plaintiffs and by a Mr. Fred H. Deppe on behalf of the defendant. Mr. Klug was Automotive Service Manager and in charge of service operations of Hulton Ford, Wood River, Illinois. He has been in the automotive service field for virtually all of his working years which number in excess of 20. Over the past 15 years he has worked on or supervised the work on an average of one brake system a day. This work included Ford Econoline braking systems. Mr. Deppe is a metallurgist. His knowledge of hydraulic brake systems is "from the standpoint of a metallurgist factor". He averaged for the past fifteen years from eight to fifteen brake disassemblies per year for brake failures. His only experience on Ford Econoline brakes is disassembly.

Both Mr. Klug and Mr. Deppe agreed that a "spongy" brake pedal indicated that the brake fluid had gotten low and air had gotten into the hydraulic system. They also agreed that when this happens a driver can suddenly lose his brakes entirely and that the brake pedal can then be built up by pumping. Both agreed that a 1963 Ford Econoline should have brakes relined approximately every 30,000 miles. Both agreed that the brakes on the van were worn out.

At the close of plaintiffs' case and at the close of all the evidence the defendant filed Motions for Directed Verdict which were denied.

The defendant first contends in this appeal that this court should enter judgment in arrest of judgment since plaintiffs' Amendment to Complaint as amended did not state a cause of action against the defendant. Defendant asserts that the law of strict liability in tort applies only to the sale of goods and applies to manufacturers, wholesalers, and retailers of goods citing *Dunham v. Vaughan & Bushnell Mfg. Co.*, 86 Ill.App.2d 315, 229 N.E.2d 684, quoting from p. 334:

"The language of Suvada is all inclusive as to the parties in a chain who places the article into commerce. Prosser, in the Law of Torts, 3rd ed., Chapter 19, § 97, p. 862, discusses the liability of retailers and wholesalers, saying:

'All of the valid arguments supporting strict liability would appear

to apply with no less force against both kinds of dealers; and there are enough cases where the manufacturer is beyond the jurisdiction, or even unknown to the injured plaintiff, to justify giving the consumer the maximum of protection, and requiring the dealer to argue out with the manufacturer any questions as to their respective liability. Particularly today, when the large wholesale supply house or even the retail chain is often actually the prime mover in marketing the goods, and the manufacturer only a small concern which feeds it, there is no reason to draw distinctions between different kinds of sellers.'"

Plaintiff Galluccio was the bailee of the van and he executed the agreement. Defendant contends that the rights, duties and liabilities between, plaintiff Galluccio and the defendant must be governed by the Lease Agreement and law of bailment, and not the law of strict liability in tort. Defendant cites *Insurance Company v. Elgin, Joliet & Eastern Ry. Co.* (1956), 229 F.2d 705, 7th Cir. quoting at l. 712:

"As said in 8 C.J.S., Bailments, §22, p. 255: 'The rights, duties, and liabilities of the bailor and the bailee must be determined from the terms of the contract between the parties, whether express or implied. Where there is an express contract, the terms thereof control, since both the bailor and the bailee are entitled to impose on each other any terms they respectively may choose, increasing or diminishing their rights, and their express agreement will prevail in the absence of such an agreement.'"

If this be correct, then the duty of the defendant to plaintiffs Barnetti and Di Maria must be considered as those of a bailor to third parties. This duty is set forth in *Chambliss v. Walker Construction Co.*, 46 Ill.App.2d 287, 197 N.E.2d 83, a 1964 case and *Huckabee v. Bell and Howell, Inc.* (1969), 102 Ill.App.2d 429, 243 N.E.2d 317. The bailor is liable to a third person for injury if (1) he supplied the chattel in question; (2) the chattel was defective at the time it was supplied; (3) the defect could have been discovered by a reasonable inspection; and (4) the defect was the proximate cause of the injury. It must be pointed out that the Huckabee case was tried on the Scaffolding Act and common-law theories. The *Chambliss* case was likewise not tried under the theory of strict liability in tort. This court, as did the court below, finds compelling the reasoning and holding of *Cintrone v. Hertz Truck Leasing & Rental Service*, 45 N.J. 434, 212 A.2d 769. Some of that Court's observations are:

. "A bailor for hire, such as a person in the U-drive-it business, puts motor vehicles in the stream of commerce in a fashion not unlike a manufacturer or retailer. In fact, such a bailor puts the vehicle he buys and then rents to the public to more sustained use on the high-

ways than most ordinary car purchasers. The very nature of the business is such that the bailee, his employees, passengers and the traveling public are exposed to a greater quantum of potential danger of harm from defective vehicles than usually arises out of sales by the manufacturer * * *. (T)he liability of the manufacturer might be expressed in terms of strict liability in tort * * *. By analogy the same rule should be made applicable to the U-drive-it bailor-bailee relationship. Such a rental must be regarded as accompanied by a representation that the vehicle is fit for operation on the public highways."

\* \* \*

"Since the exposure of the user and the public to harm is great if rented vehicle fails during ordinary use on a highway, the answer must be that it (strict liability) continues for the agreed rental period. The public interests involved are justly served only by treating an obligation of that nature as an incident of the business enterprise. *The operator of the rental business must be regarded as possessing expertise with respect to the service life and fitness of his vehicles for use.* That expertise ought to put him in a better position than the bailee to detect or to anticipate flaws or defects or fatigue in his vehicles. Moreover, as between bailor for hire and bailee the liability for flaws or defects not discoverable by ordinary care in inspecting or testing ought to rest with a manufacturer who buys components containing latent defects from another maker, and installs them in a completed product, or just as it rests with a retailer at the point of sale of the consumer. And, with respect to failure of a rented vehicle from fatigue, since control of the length of the lease is in the lessor, such risk is one, which in the interest of the consuming public as well as of the members of the public traveling the highways, ought to be imposed on the rental business." (Italics ours)

 Cases from other jurisdictions in accord are *McClaflin v. Barshire Equipment Rental Company*, 79 Cal.Rptr., 337, *Aetna Insurance Co. v. Guidry*, 216 So.2d 859, *Ettin v. Ava Truck Leasing, Inc.*, 251 A.2d 278, 53 N.J. 463, *Martinez v. Nichols Conveyor, etc. Co.*, 52 Cal.Rptr. 842. See also A.L.R.2d 850 Anno. Lease on Hire-Warranties. Therefore, to the extent that the Chambliss and Huckabee cases are inconsistent with this opinion they will not be followed. Our conclusion is further strengthened by the case of *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182. The logic and rationale of the case, which dealt with a purchase, is quite appropriate to the case at hand, in which a lease is involved. "Without extended discussion, it seems obvious that public interest in human life and health, the invitations and solicitations

to purchase the product and the justice of imposing the loss on the one creating the risk and reaping the profit are present and as compelling in cases involving motor vehicles and other products, where the defective condition makes them unreasonably dangerous to the user * * *." Therefore, we conclude the plaintiffs' amended complaint as amended states a cause of action.

Defendant next asserts that the verdict and judgment in favor of Barnetti is against the manifest weight of the evidence as Barnetti was guilty of negligence as a matter of law. We cannot so find. This case was tried before the decision in *Williams v. Brown Mfg. Co.*, 45 Ill.2d 418, 261 N.E.2d 305, declaring contributory negligence, as generally known in negligence actions, not a bar to recovery in strict product liability tort action. The jury we know, because of their answer to the special interrogatory in which they found plaintiff Barnetti was not guilty of negligence, considered the issue of Barnetti's negligence. Under the rule as set forth in *Pedrick v. Peoria and Eastern Railroad Company*, 37 Ill.2d 494, 229 N.E.2d 504, defendant was not entitled to a directed verdict or a judgment notwithstanding the verdict. Considering the evidence as a whole and keeping in mind that the jury is the arbiter of the credibility of the witnesses and weight to be given their testimony, there was sufficient evidence from which the jury could find that Plaintiff Barnetti was not guilty of contributory negligence. The jury's verdict was not against the manifest weight of the evidence under the tests laid down in *Haas v. Woodard*, 61 Ill.App.2d 378, 209 N.E.2d 864 and *Roth v. Lissner Iron & Metal Co.*, 88 Ill.App.2d 352, 232 N.E.2d 534. As stated in *Haas v. Woodard*, verdicts and judgments are not considered against the manifest weight of the evidence unless a conclusion opposite to that reached by the jury is clearly evident or that the jury's verdict is palpably erroneous.

Because of the above holding, all contentions made by the defendant that the jury incorrectly found the plaintiffs, in response to special interrogatories, not engaged in a joint enterprise; and the question of negligence allegedly imputed to plaintiffs Di Maria and Galluccio, must now be considered moot and, therefore, we shall not consider them.

We shall now consider those remaining issues for which the defendant has cited authority for its view.

The defendant urges that the court erred in allowing plaintiffs' witness, William Klug, to give an opinion as to the braking efficiency of the left front wheel of the van. Defendant cites *People v. Jennings* (1911), 252 Ill.534, 96 N.E.2d 1077. We agree wherein it is stated "Expert evidence is admissible when the witnesses offered as experts have peculiar knowledge or experience not common to the world, which

renders their opinions, founded on such knowledge or experience, an aid to the Court or jury in determining the questions at issue." This case, however, does not conflict in any manner with *Supolski v. Ferguson & Lange Co.*, 272 Ill. 82, 111 N.E. 544, from which we quote "The qualification of an expert witness rests largely in the discretion of the trial judge, and this Court will not reverse a case on that ground unless that discretion has been manifestly abused". The qualifications of Mr. Klug have, in part, been set forth previously and no purpose would be served by our now listing additional facets of Mr. Klug's qualification. There has not been an abuse of discretion by the trial court.

Next, the defendant states that the plaintiffs' counsel made inflammatory and improper argument to the jury which was prejudicial to the defendant. Defendant first contends that plaintiffs' counsel comment on why the defendant's counsel rejected certain jurors. Second, that defense counsel was referred to as a "corporation counsel" or "corporate attorney" and third, defendant objects to the following statement of the plaintiffs' counsel made over objection: "He'll (Di Maria) never go into his son's bedroom at six o'clock in the morning and say ＊ ＊ ＊ wake up son, it's time to go hunting will he? He'll never go out and say, son, let's throw a football. He'll never have a fifteen year old daughter come up to him and ＊ ＊ ＊. This boy will never be able to engage in a normal family life. Would that be worth a hundred thousand dollars? I think it would."

As stated in *Elizer v. Louisville & Northern Ry. Co.*, 128 Ill.App.2d 249, 261 N.E.2d 827: "The rule governing review of assignments of error based upon alleged improper argument to the jury is clearly stated in Belfield v. Coop., 8 Ill.2d 293, 134, N.E.2d 249. The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial court has performed his duty and properly exercised the discretion vested in him (case cited). The attitude and demeanor of counsel and the general atmosphere of the trial are observed by the trial court, and cannot be reproduced in the record on appeal. The trial court, is therefore, in a better position than a reviewing court to determine the prejudicial effect, if any, or a remark made during argument, and unless clearly an abuse of discretion, its ruling should be upheld." The trial court in its opinion and order stated "The court ＊ ＊ ＊ finds no prejudicial error in plaintiffs' final argument". We find no abuse of discretion.

As a final issue for review, the defendant urges that the trial court erred and abused its discretion in giving certain instructions ten-

dered by plaintiffs over defendant's objections and refusing to give certain instructions tendered by defendant.

The defendant objects to the giving to the jury of plaintiffs' Instruction No. 8. The Instruction is I.P.I. No. 15.01 defining proximate cause. Defendant urges the court erred because the instruction referred to the possibility of concurring causes. We think that there was sufficient evidence before the jury to allow them to adequately understand the nature and extent of the conduct of all the parties in the collision of the two vehicles. Thus, the jury could have determined that some negligence rested with the other vehicle. It was not prejudicial error for the whole instruction to have been given when, in fact, only the first sentence might have been given. *Butler v. Palm*, 36 Ill.App.2d 357, 184 N.E.2d 633. As noted in the Note on Use in I.P.I., "This instruction in its entirety should be used only when there is evidence of a concurring or contributing cause to the injury or death (other than acts or omissions of the plaintiff). In cases where there is no evidence of a concurring or contributing cause, the short version without the bracketed material may be used." Here plaintiff Barnetti testified that although his vehicle was approaching the intersection without his being able to slow down, the other vehicle did not stop or slow down but continued to make its turn in front of him. Plaintiff Barnetti also testified that the lights of the other vehicle seemed to be coming from the island. Thus there was some evidence that there may have been fault other than that of the plaintiffs and defendant, herein.

The defendant further objects to the following instruction given to the jury as Plaintiffs' Instruction No. 12:

"One who leases any product in a defective condition unreasonably dangerous to the use is subject to liability for physical harm to be caused to the user if:

a. The Lessor is engaged in the business of leasing such product, and

b. It is expected to reach the user in the condition in which it is leased.

This rule applies even if the lessor has exercised all possible care in the maintenance and lease of his product.

If you decide that the defendant violated the principles above stated on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the defendant is liable."

This instruction was identical to the approved in *Dunham v. Vaughan & Bushnell Mfg. Co., supra*, except for the references to the

282

product being leased instead of being sold. In view of our holding as above stated, we find this instruction to be correct.

This court holds that the remaining objections to the instructions either given or refused are not well taken and that no purpose would be served by a more exhaustive recitation.

The judgment of the trial court is affirmed.

Judgment affirmed.

CREBS and JONES, JJ., concur.