Melvin E. Witt, Plaintiff-Appellant, v. John Hennes Trucking Company, Defendant-Appellee.
John Hennes Trucking Company, Third Party Plaintiff, v. Corbetta Construction Company, Third Party Defendant.

Gen. No. 49,136.

First District, First Division.

May 25, 1964.

Joseph Barbera, of Chicago (Dom J. Rizzi, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Perry L. Fuller and Thomas J. Weithers, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

This is an action to recover damages for negligence. Defendant filed a third-party complaint naming plaintiff's employer as third-party defendant. The case went to trial on plaintiff's original complaint and at the close of all the evidence plaintiff asked leave to file an amendment alleging a violation of the Structural Work Act, which the court denied. The cause was then submitted to the jury and it failed to reach a verdict. After allowing a mistrial, the trial judge sustained defendant's motion for judgment in its favor and against plaintiff, and also dismissed the third-party complaint. This appeal followed.

Plaintiff was injured while employed as a carpenter by the Corbetta Construction Company. Corbetta was in the process of erecting precast warehouses at the Great Lakes Naval Station. Corbetta leased a crane from the defendant for use in the project. The crane was brought to the site by a crane operator about six weeks before the occurrence. Some wooden block supports were on the frame of the crane when it arrived along with other equipment for it. The wooden block supports were 12 x 12 or 14 x 14 inches and between 20 and 24 inches long. Blocks were placed under outriggers which extended from the sides of the crane and were positioned to support the crane when in use. Wedges were used to fill in whatever space there might be between the outriggers and the supporting blocks so that the crane stood rigid.

A crane operator always went with the units that defendant leased out. Leon Fraker was the operator sent with the crane here involved. His wages were paid by defendant. Defendant made his social security payments and paid the withholding tax on his wages. At the end of each month Corbetta compiled a summary of his hours' work and forwarded it to the defendant. Corbetta paid defendant a fixed per hour rate and defendant in turn paid Fraker that amount. The hour's rate was part of the rental payment for the crane's use. Corbetta, if not satisfied with Fraker, could have discharged him.

The crane was used to place slabs of concrete into position. These slabs or panels were precast and composed the outside walls of the warehouses. Their sizes varied. The section involved in the accident was 12 feet high and 20 or 22 feet in length. It was 6 or 8 inches thick and weighed about 15 tons. The panel had hooks protruding from the top at each end. A cable sling ran through these hooks and connected with an I beam about 20 feet in length, about the

393

same length as the panel. This I beam was suspended from two other cables which attached onto the hook on the boom of the crane. The distance between the I beam and the top of the concrete panel was approximately 10 feet. The panel was to be placed upon a concrete footing which was 3 feet above the ground. It would then be fastened to concrete column uprights. Plaintiff's job was to fasten the ends of the panel somewhere to these columns so that at least temporarily it would not fall out. Corbetta was the general contractor on the job, planned and laid out the moving of the crane into position in advance by means of a model. The crane was driven to this predetermined position by an oiler employed by Corbetta. Ironworkers also employed by Corbetta would then spot the crane into this position and the ironworker foreman would check to see that the rigging of the blocks was safe. The crane was repositioned in this manner two to nine times a day. The ironworkers would block the crane placing the blocks under each corner of the crane. As this panel was being moved into position, plaintiff was working on the top of a 20-foot-high scaffold. A coworker worked at the other end of the panel on another scaffold. As soon as the panel was in place plaintiff was to go down to the next level of the scaffold and make a tie or temporary connection about 12 inches from the panel top. He would then work down, making two or three such ties, hooking the panel up with the balance of the wall. The practice was to hold the panel with the boom until it was temporarily tied. At the time of the occurrence, the crane operator was moving the 15-ton concrete slab one or two feet in front of the scaffold upon which plaintiff was working. The panel was between the scaffold and the building wall which was being erected. It was to rest upon the footing that was three feet above the ground. At the time the panel was six to

eight inches from the top of the footing, it came down, missing the footing and crashing to the ground in front of the scaffold upon which plaintiff was working. When the panel came down the I beam was two or three feet above plaintiff's head. At the same time that plaintiff heard the crash, something hit him on the left side of the head and knocked him off the scaffold. He landed sideways, wedged in between the bracing on the scaffold and the panel. It was discovered that one of the supporting blocks for the crane had splintered or cracked and the right front side of the crane was tilted.

■ The errors charged in the appeal are that the evidence shows the crane was not being operated safely and that it was not safe for operation. Nowhere in plaintiff's brief does he indicate or contend that there was evidence that Fraker was negligent in the operation of the crane. Plaintiff says defendant was negligent in not exercising reasonable care commensurate with the type of chattel it leased to Corbetta.

Plaintiff quotes from Restatement of Law of Torts (1934), Vol 2, Sec 408 wherein it provides:

"One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be in the vicinity of its probable use, for bodily harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such uses or to disclose its actual condition to those who may be expected to use it."

"Comment:

(a) When lessor must inspect. The fact that a chattel is leased for immediate use makes it unreasonable for the lessor to expect that the lessee will do more than give it the most cursory of inspections. The les-

sor must, therefore, realize that the safe use of the chattel can be secured only by precautions taken by him before turning it over to the lessee. . . . The minuteness of the inspection required varies with the danger which will be likely to result if the chattel is defective . . . ."

So, plaintiff charges that defendant failed to exercise reasonable care commensurate with the type of chattel involved and that this is evidenced by the fact that the wood block support for the crane cracked and crushed and the crane tilted causing plaintiff's injuries. He takes the position that the supports for the crane must be considered every bit as much a part of the crane equipment as the boom itself; that they came as part of the crane equipment when it arrived on the job site. The operator furnished by the defendant to operate the crane had the duty to see that it was operated safely.

Defendant agrees that the lessor has a duty to use reasonable care to see that the machinery is not in defective condition as set forth in the Restatement of the Law of Torts. But, it argues, while the law imposes a duty it must be established by competent evidence that there was a breach of that duty to create liability. In order for the plaintiff to establish a good cause of action in this regard and warrant the submission of the case to the jury, he was obligated to establish that:

1. Defendant supplied the particular block that broke;
2. a defective condition existed in the block at the time it was supplied;
3. such defective condition was known or could have been discovered by means of a reasonable inspection, and

396

4. the defective condition was a proximate cause of his injuries.

The failure to prove directly or by circumstantial evidence any one of the foregoing propositions would justify the judgment of the court.

█ Testimony was that some 12 x 12 or 14 x 14 square and 20 to 24 inch blocks came with the crane. There was some evidence that Corbetta made blocks and used wedges in addition to those supplied by defendant. Evidence was that the block that broke was 12 x 12 square and about 2 feet long. As to the defective condition, we believe the evidence was lacking. A witness for plaintiff said the block appeared to be a sound piece of wood other than the fact that it split—that there was nothing unusual about it from the outside. Another witness for plaintiff stated that the blocks that came with the crane were dark and weather colored like any block that had been in the weather and used. The break appeared to be of recent origin. There was no evidence that this type of block was not customarily used or that it was not suitable for the purposes intended. One witness did say it was of pine wood, another thought it was oak. To establish liability there must be some evidence that the defendant knew or should have known that the block supplied was defective or inherently unsafe for such purpose. It is not in itself negligent to supply a certain type of material which is reasonably safe and customarily used, though other materials might conceivably be safer. Watts v. Bacon & Van Buskirk Glass Co., 18 Ill2d 226, 232, 163 NE2d 425 (1959); Day v. Barber-Colman Co., 10 Ill App2d 494, 508, 135 NE2d 231 (1956).

The blocks supplied by defendant were on the site for six weeks prior to the occurrence. They were used in positioning the crane from two to nine times

a day. The crane was driven to the predetermined position by an oiler employed by Corbetta. Ironworkers of Corbetta set the blocks under the crane in accordance with instructions from the foreman. The wedging was accomplished by using smaller blocks made and owned by Corbetta in addition to the larger blocks described as similar to those delivered by defendant. It was not satisfactorily established what caused the block to break. If plaintiff's contention is true that his evidence created a question of fact as to whether it was a block delivered by defendant that broke, the fact that it broke six weeks after delivery and used, in no way establishes that a defective condition existed in the block for such period of time. Placher v. Streepy, 19 Ill App2d 183, 192, 153 NE2d 369 (1958); Todd v. S. S. Kresge Co., 303 Ill App 89, 99, 24 NE2d 899 (1939).

Plaintiff cites 46 ALR2d 404 at p 450:

> "(d) Construction Machine.
> The rule that the bailor for hire must use reasonable care to see that the vehicle or machine rented out by him is not in a defective condition has been applied to the bailment of automotive machinery used for construction purposes."

and at p 451:

> "Sec 15. Liability to third persons.
> The duty of reasonable inspection of an automotive vehicle or machine by a bailor for hire before placing it in the hands of the bailee has been recognized in cases involving injury or death to persons other than the bailee or one standing in his place. . . . In either event, it appears unquestioned that a bailor for hire of an automotive vehicle or machine must exercise ordinary care in inspecting the bailed chattel prior to placing it in the hands of the bailee . . . ."

Assuming the blocks delivered were part of the crane equipment, and that the block that broke was or could be one delivered with the crane, the evidence fails to prove that the block was defective when delivered. Its continuous use would negate such inference.

Plaintiff argues that in leasing the crane with an operator to control its operations, the defendant was bound to know the dangers incident to insufficient supports for the crane. Corbetta planned and laid out every move in advance and the movement of the crane into actual positions was planned on a model. The movement of the actual crane and the panels was directed by the ironworkers. An oiler would drive the crane to the position determined by Corbetta. The ironworkers would spot the crane in position and the foreman would check to see if the rigging of the blocks was safe. The ironworkers would perform all the work in connection with blocking the crane. It is plaintiff's contention that Fraker, the crane operator, was an employee of the defendant and through him defendant knew or should have known that the supports were insufficient. He contends that it was Fraker's duty to see that the supports were sufficient. Defendant says Fraker was a loaned employee but even if he were not, and was an employee of the defendant, it was not established that he was negligent. The trial court so held and we agree with it. The cause of the accident was the tipping of the crane which was the result of the breaking of a wooden block. What caused the breaking was not established and proof was lacking that Fraker was in any manner negligent in the operation of the crane. The court properly entered judgment against plaintiff.

██ The proffered amendment at the close of all the evidence charged the defendant wilfully violated the provisions of the Structural Work Act in that the

said crane was not erected and assembled in a safe, suitable and proper manner, and not erected, placed or operated as to give adequate protection to the life and limb of any person or persons working in the immediate area of said crane, and in that said crane was placed on a wooden support that was worn, defective and inadequate for its intended purposes.

From the views herein expressed, we must hold that the amendment did not conform to the proofs nor did the evidence sustain the allegations therein contained. For these reasons the order and judgment of the trial court are affirmed.

Order and judgment affirmed.

MURPHY, P. J. and BURMAN, J., concur.