(Nos. 41949-41955 cons.— )

FRANCIS HUCKABEE, Appellee and Appellant, *vs.* BELL & HOWELL, INC., *et al.*—(SAFEWAY STEEL SCAFFOLDS CO. OF ILLINOIS, Appellant and Appellee.)

*Opinion filed December 4, 1970.*

David Jacker, William H. Symmes, John M. O'Connor, Jr., and Kirkland, Ellis, Hodson, Chaffetz & Masters, all of Chicago, (Jon R. Waltz, of counsel,) for appellant and appellee.

Barbera and Friedlander, of Chicago, (Dom J. Rizzi, A. J. Hardiman, and Frank M. Greenfield, of counsel,) for appellee and appellant.

Mr. Justice Ward delivered the opinion of the court:

A jury in the circuit court of Cook County returned a verdict of $80,000 for the plaintiff, Francis Huckabee, against the defendant, Safeway Steel Scaffolds Company. On appeal the Appellate Court for the First District reversed in part, affirmed in part and remanded for a new trial. (102 Ill. App. 2d 429.) We granted the petitions of both parties for leave to appeal.

The facts which led to the litigation are described in the opinion of the appellate court. "Plaintiff was injured as a result of an accident which took place on Friday, March 29, 1957. At the time of the accident, plaintiff, a painter for the Guy M. Zettler & Co., was engaged in painting the Bell & Howell plant located at 7100 McCormick in Chicago. Anderson was the general contractor supervising the construction of an addition to the plant, and Zettler was the painting sub-contractor.

"Plaintiff and his co-worker Emery Nissen were en-

gaged in painting certain pipes and steel structures below the ceiling. They were able to reach these pipes by use of a scaffold tower fifteen feet above the floor. This scaffold was constructed of tubular steel members and was mounted on four wheels or casters so that it could be rolled from place to place. The four wheels were equipped with lever-operated brakes to prevent the scaffold from rolling. The brake and wheel comprised a single unit, which had a four-inch stem that was inserted into the tubular, vertical scaffold member.

"The component parts of the scaffold had been brought to the job site in January 1957 by a Zettler employee in one of its trucks. The disassembled parts were then assembled into five separate scaffolds of the same type by the Zettler employees. All five scaffolds remained on the job through April 4, 1957 when the job was completed. Nissen and another employee of Zettler, Lang Ward, who did not testify, had disassembled the scaffold involved in the occurrence, moved the parts to the room in which the accident happened, and there reassembled the parts into a single scaffold. Nissen and Ward had used the scaffold uneventfully for two days in March.

"Plaintiff had begun working at the Bell & Howell job in January, but was sent to another site for a period of time. On Thursday, March 28, the day before the accident, the plaintiff and Nissen began working together on the reassembled scaffold. On that day, the scaffold moved twice while they were using it. After it moved the first time, both men descended, adjusted the brakes and found them working well. Nissen returned to the top of the scaffold when it moved again and one of the wheels came off. The plaintiff held up the corner of the scaffold from which the wheel came off while a man who was sweeping the floor re-inserted the wheel; this man did not testify. Afterwards, Nissen and the plaintiff resumed work on the same scaffold because 'it seemed to be fine' after they checked it, and plaintiff

testified that he did not know of any other scaffolds in the area. The scaffold was always on a level floor.

"They used the same scaffold all next morning, the day of the accident, without incident. After lunch they checked the brakes and resumed work. About ten minutes later, the scaffold tipped and then fell to the floor. Nissen managed to hang on to a sprinkler pipe hanging from the ceiling but plaintiff fell to the concrete floor with the scaffold landing on top of him. As a result, he sustained severe and permanent injuries, including a fractured jaw and fractures of both wrists.

"Dominic Pomponio, an employee of Bell & Howell, testified that, although he did not witness the accident, he heard the crash and ran to the scene. He saw the scaffold lying on the floor with a caster missing from one of the corners."

The plaintiff charged the defendant with a violation of the Structural Work Act (Scaffold Act) (Ill. Rev. Stat. 1969, ch. 48, pars. 60-69) and with common-law negligence. Motions by the defendant for a directed verdict and for a judgment notwithstanding the verdict were denied. The appellate court held that the defendant's motion for a directed verdict should have been allowed as to the Structural Work Act claim, since the evidence showed that the defendant, who was the owner-supplier of the scaffold, was not "in charge of" the work within the meaning of the Act. As to the negligence claim, the court said that the evidence was sufficient to create a jury question and that, therefore, the defendant's motions for a directed verdict and for a judgment notwithstanding the verdict were properly denied. The court ordered a retrial on the negligence count because the proof required under the Scaffold Act count is "of a different degree and nature than the proof required for common-law negligence * * *," (102 Ill. App. 2d at 442.) and the presumption that a general verdict is based upon

evidence which supports the valid count could not be invoked.

The plaintiff argues that the appellate court erred in holding that in order to be subject to civil liability under the Scaffold Act it is necessary that the person charged with a violation of the Act must be in charge of the work being performed. His complaint alleged that the defendant wilfully violated section 60 of the Act, which provides in part: "all scaffolds * * * erected or constructed * * * shall be erected and constructed, in a safe, suitable and proper manner * * *." The defendant was within the terms of the Act, the plaintiff says, because, the terms "erect and construct" have been construed to mean "furnish" as well, citing *Bounbougais* v. *Republic Steel Corp.*, (7th cir., 1960), 277 F.2d 726, and *Oldham* v. *Kubinski*, 37 Ill. App. 2d 65. He argues that the section of the Act imposing civil liability for injuries which result from violations of the Act does not condition that liability upon this defendant's having been in charge of the work involved. However, this analysis does not consider the language of the penal provisions of the Act, which appear in an earlier paragraph of the same section of the Act. That paragraph says: "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building * * * within the provisions of this act, shall comply with the terms thereof * * *." (Ill. Rev. Stat. 1969, ch. 48, par. 69.) We have read that "having charge of" requirement of the penal provisions into the civil liability part of the Act and declared its applicability to "other persons" referred to in section 9. (par. 69.) This court said in *Gannon* v. *Chicago, Milwaukee, St. Paul & Pacific Railway Co.*, 22 Ill.2d 305: "It is inescapable from these words that the legislature intended to hold liable those named persons who are in charge of the work, and the words 'or other person' were included to

cover the situation where someone other than the named persons was in charge of the work, in order to prevent such person from escaping liability." (*Gannon* v. *Chicago, Milwaukee, St. Paul & Pacific Railway Co.*, 22 Ill.2d 305, 319; see also, *Larson* v. *Commonwealth Edison Co.*, 33 Ill.2d 316.) Thus, before civil liability will attach, whether the defendant is an owner, contractor, subcontractor, foreman or other person, under the Act, the defendant must have been in charge of the work. The appellate court's holding was not in error.

The defendant contends that the appellate court should have ordered a full reversal of the trial court. It argues that its motions for a directed verdict and for judgment notwithstanding the verdict were erroneously denied on the common-law-negligence count. Although this court appears not to have considered the question, the duties of a bailor to third persons for negligence have been considered in at least two appellate court cases. (*Chambliss* v. *Walker Construction Co.*, 46 Ill. App. 2d 287; *Witt* v. *Hennes Trucking Co.*, 49 Ill. App. 2d 391.) Adopting the position taken by the Restatement of Torts, 2nd (sections 388, 395, 408 and Comments,) these cases which also involved leased equipment, held that a bailor is liable to an injured third person if (1) he supplied the chattel in question, (2) the chattel was defective at the time it was supplied, (3) the defect could have been discovered by a reasonable inspection, when inspection is required (*i.e.*, where the danger of substantial harm because of a defect is great, as we deem it is here), and (4) the defect was the proximate cause of the injury.

A motion for a directed verdict as well as a motion for judgment notwithstanding the verdict will not be granted unless "all of the evidence when, in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." (*Pedrick* v. *Peoria and Eastern Railroad Co.*, 37 Ill.2d 494, 510.) In applying the rule, the evidence presented

and the inferences which can be drawn from the circumstances may be considered by the trial court. See *Larson* v. *Harris,* 38 Ill.2d 436, 440.

The defendant contends, to support its argument, that no evidence was presented which demonstrated that the scaffold or any of its component parts were defective when delivered to the plaintiff's employer, and further, that the evidence failed to show that a defect existed in the equipment at any time. However, the record discloses that on the day prior to the incident here the scaffold, while resting on a level floor, shifted or moved suddenly and without apparent reason, on at least two occasions. There was testimony that these unexplained incidents occurred despite the fact that the braking devices on the casters were securely fastened. Too, on one of these occasions one of the casters or wheels became disengaged from the vertical tube into which it had been inserted. Other testimony revealed that a similar, unexpected movement of the scaffold took place moments before the incident here. The question of any contributory negligence by the plaintiff is not raised here. There was evidence that the brakes had been applied to the casters before the men ascended the scaffold. A workman, who came on the scene immediately after the incident, testified that he saw a caster from the scaffold lying near it on the floor. Recognizing that "products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function" (*cf. Dunham* v. *Vaughan & Bushnell Manufacturing Co.,* 42 Ill.2d 339, 342), we consider that the appellate court, applying the rule in *Pedrick,* properly held that the record contained sufficient circumstantial evidence to allow the case to go to the jury on this element of the negligence claim.

We consider it was also proper to submit to the jury the question whether the defect existed at the time the scaffold was furnished by the defendant-bailor to the plaintiff's

employer. Although the scaffold was supplied in the form of its component parts and was subsequently assembled, disassembled and reassembled outside the control and supervision of the defendant, there is no evidence which suggests that the materials supplied were in any way damaged or otherwise adversely affected in this assembling process. The defendant does not challenge the care exercised by the Zettler employees in assembling the scaffold. The scaffold was used uneventfully for some three months following delivery by the defendant. There is no evidence of misassembling or that the scaffold or any of its parts was misused during this period. It has been recognized that a defect in a product does not always manifest itself at once. (See *Dunham* v. *Vaughan & Bushnell Mfg. Co.*, 42 Ill.2d 339; *Suvada* v. *White Motor Co.*, 32 Ill.2d 612.) It would not be unreasonable to infer from these circumstances that the condition of the scaffold at the time of the injury was the same as when it or its components were supplied. There was sufficient evidence from which the jury could conclude that if the scaffold was defective at the time of the plaintiff's injury, it was defective at the time it was supplied by the defendant. We conclude that there was enough evidence on this question to leave its resolution to the jury.

The defendant also protests there was no proof that it had supplied the scaffold involved or that it was negligent in any regard. The first argument simply overlooks that the defendant in answers to interrogatories admitted that it was the owner of the scaffold involved in the occurrence and had leased it to Zettler & Co., the plaintiff's employer. As to the negligence point, considering the evidence concerning the unsafe condition of performance of the scaffold, it properly could be considered by the jury from the circumstances that a caster or a braking device, or both, had been defective at the time of being delivered. No question of proximate cause was raised by the defendant in the appellate court or here. On the question of inspection by the defendant just prior

to the delivery to the bailee, an officer of the defendant was called under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1969, ch. 110, par. 60.) His testimony was that although scaffolding parts, including the casters, brakes and wheels, were inspected as a matter of routine prior to their delivery, he had "no way of knowing" whether the equipment involved here had been inspected. Assuming that the equipment was inspected, a reasonable inspection by the bailor, considering the physical nature of the caster securing devices and the brakes and the principles underlying their use, should have disclosed, we judge, the defect or defects. Under these circumstances a directed verdict in favor of the defendant on these questions would have been error. *Pedrick v. Peoria and Eastern Railroad Co.*, 37 Ill.2d 494.

Finally, the defendant says that the appellate court erred in affirming the circuit court's refusal to give the jury an assumption of risk instruction which had been requested by the defendant. It is the defendant's position that the plaintiff, because he continued to use the scaffold after dangerous incidents the day before his injury, assumed the risks of the injuries. However, it is now clear that so-called assumption of risk is not a defense to an action based on common-law negligence. *Barrett* v. *Fritz*, 42 Ill.2d 529.

For the reasons given, the judgment of the Appellate Court, First District, is affirmed.

*Judgment affirmed.*