GARY JONES, Plaintiff-Appellant, v. McCOOK DRUM AND BARREL COMPANY, INC., Defendant-Appellee and Third-Party Plaintiff (Valspar Corporation *et al.,* Third-Party Defendants).

Third District   Nos. 3—91—0528, 3—91—0552 cons.

Opinion filed June 26, 1992.

Edward G. Vogt, of Kankakee, for appellant.

Richard A. Barrett, Jr., and Scott E. Ellefsen, both of Cassiday, Schade & Gloor, of Chicago (Kathlein K. Krider, of counsel), for appellee McCook Drum and Barrel Company.

JUSTICE McCUSKEY delivered the opinion of the court:

Plaintiff appeals the dismissal of his products liability claim and the trial court's directed verdict for defendant in plaintiff's negligence action. We affirm.

Plaintiff, Gary Jones, filed suit against defendant, McCook Drum & Barrel Co., in negligence and products liability for injuries sustained while plaintiff was operating the landing gear on a semitrailer allegedly owned by defendant. Plaintiff was a truck driver for third-party defendants Valspar Corporation and McWhorter, Inc. (collectively, Valspar).

Valspar manufactured resins, paints and varnishes. Defendant and other companies supplied Valspar with 55-gallon steel drums for Valspar's finished product.

Defendant and the other drum suppliers delivered empty drums loaded on semitrailers. The semitrailers were "dropped" from a truck tractor in designated areas on Valspar's premises. Once disconnected from the truck tractor, the forward portions of the semitrailers rested on "dolly legs," which were lowered in position by a mechanical crank and gearbox.

Valspar's premises contained loaded semitrailers from a number of drum suppliers, and the different suppliers' semitrailers would be interspersed within the yard. Not all the semitrailers were labeled with the delivering company's name. The loaded semitrailers remained in the plant yard until Valspar needed them.

On the day of the accident, plaintiff was instructed to move one of defendant's semitrailers to the plant dock. Plaintiff drove a Valspar truck tractor to the location of the semitrailer. The front of the semitrailer was sitting too low to accommodate the truck tractor's fifth wheel, so plaintiff attempted to increase the height of the trailer by raising the dolly legs. Plaintiff testified that he locked the gearbox for the dolly legs in "low" and turned the "z"-shaped crank clockwise from a "four o'clock" position to a "seven o'clock" position. At that point, the crank allegedly kicked back counterclockwise, causing injury to plaintiff's right wrist and hand. Plaintiff testified that he was raised a foot and a half to two feet off the ground. Plaintiff managed to maintain his balance and did not fall. Plaintiff speculated that the counterclockwise "kickback" action resulted from the gears jamming.

Afterwards, plaintiff informed his supervisor, Bill Closkin, of the incident. Closkin then inspected the semitrailer and also attempted to raise the landing gear. Closkin testified that he operated the crank from the 6 o'clock to the 11 o'clock position, at which point the crank slipped without jamming or kicking. Closkin did not make another attempt to raise the dolly legs. Like plaintiff, Closkin could not recall any physical characteristics of the semitrailer.

Plaintiff's amended complaint in negligence and products liability alleged the landing gear on defendant's semitrailer was defective and that defendant should have been aware of the defect. Plaintiff further alleged defendant failed to inspect its semitrailers to determine whether the landing gear was safe and functional. Defendant filed a third-party action against Valspar, plaintiff's employer, seeking contribution and indemnity. Defendant's motion to dismiss the products liability count was granted.

The action proceeded to trial. At the close of plaintiff's case in chief, defendant moved for and received a directed verdict. The court stated that plaintiff failed to sustain his burden to prove either defendant's actual or constructive notice of the alleged defect; the existence of an industry standard governing inspection of semitrailers and defendant's breach of the standard; or proximate causation of plaintiff's injuries.

■ Plaintiff relies upon our supreme court's decision in *Huckabee v. Bell & Howell, Inc.* (1970), 47 Ill. 2d 153, 265 N.E.2d 134, for the elements of his cause of action in negligence. The court in *Huckabee* established that a bailor is liable in negligence to an injured third person if:

> "(1) [the bailor] supplied the chattel in question, (2) the chattel was defective at the time it was supplied, (3) the defect could

have been discovered by a reasonable inspection, when inspection is required ***, and (4) the defect was the proximate cause of the injury." *Huckabee*, 47 Ill. 2d at 158, 265 N.E.2d at 137.

Defendant argues that the standard of liability set forth in *Huckabee* applies only in cases of nongratuitous bailments, and therefore does not apply in the instant case. Defendant maintains that Valspar's use of defendant's semitrailers constituted only a gratuitous bailment—a bailment made only for the benefit of the bailor, with no benefit to the bailee. We note, however, that while the case before the court in *Huckabee* involved leased equipment, the court made no other distinction between gratuitous and nongratuitous bailments. Even if a distinction were intended, we find the *Huckabee* court's analysis applicable to the instant case.

Even accepting the elements of negligence in *Huckabee*, defendant argues that plaintiff failed to establish a *prima facie* case. Defendant argues that plaintiff failed to present any evidence to support the allegations that: (1) defendant supplied Valspar with the semitrailer which allegedly caused plaintiff's injuries; (2) the semitrailer was in a defective condition; and (3) the defective condition was known to defendant or could have been discovered upon a reasonable inspection. We agree with the defendant's analysis based upon our review of the record.

■■ Considering the first part of the *Huckabee* analysis, we find that no evidence was presented that defendant supplied the allegedly defective semitrailer. Plaintiff was unable to specifically identify the subject semitrailer or to show that it was indeed supplied by defendant. Although plaintiff did testify that he was ordered by his supervisor to move one of defendant's semitrailers, he was later unable to provide physical characteristics or markings of the actual semitrailer.

On the date of the accident, Valspar's premises contained semitrailers owned by a number of drum suppliers. Like defendant, the other companies did not consistently label their semitrailers with the name of the company. In addition, the semitrailers were not grouped according to supplier. Thus, the *location* of the allegedly defective semitrailer, in the absence of other identifying characteristics, would not necessarily implicate any one owner.

■■ We also agree with defendant that plaintiff failed to present evidence that the semitrailer he was attempting to raise was defective at the time it was supplied. The evidence does, however, support an inference that the semitrailer *was* operable at the time of its delivery, since plaintiff testified that when he first saw the semitrailer, it was standing on its landing gear; thus, the landing gear must at least have been operable when the semitrailer was first detached from the

tractor that brought it into the yard. The record similarly reveals an absence of evidence that the semitrailer was defective at the time plaintiff was injured.

Serape Kalpakjian, a professor of mechanical engineering, testified for plaintiff as an expert witness. Professor Kalpakjian testified that the mechanical components of the landing gear, being subject to wear and tear, could become worn, leading to the crank jamming and kicking back. Kalpakjian had no opinion as to how often the landing gear could be raised and lowered before the gears required maintenance.

We note that Kalpakjian was unable to determine the precise cause of the alleged kickback. While he stated that it was possible the kickback occurred because of wear and tear, he had no way of knowing whether wear and tear or some other factor caused the landing gear to jam in this case. The only evidence presented in support of the alleged defective condition was plaintiff's own testimony that the crank on the trailer landing gear "kicked back."

Plaintiff also failed to show that the allegedly defective condition could have been discovered upon a reasonable inspection by the defendant. William Uhler testified that he was responsible for maintenance on defendant's semitrailers. He testified that company employees performed much of the work on the semitrailers pursuant to defendant's inspection program. Uhler also testified that he personally operated the landing gear of every semitrailer owned by the defendant at least once every three weeks, and that an independent contractor inspected and serviced the semitrailers on a regular basis.

Plaintiff did *not* attempt to contradict Uhler's testimony, and offered *no* evidence of what standard of care applied. Plaintiff's expert stated that the landing gear mechanisms were enclosed in a box and were not open to inspection without taking the box apart. No evidence was offered that a reasonable inspection would include the disassembly of the gearboxes. Also, plaintiff's expert could not speculate as to how many times the landing gear could be operated before the gears would require maintenance.

Plaintiff also contends that the defendant knew or should have known of the defective crank. We disagree. The evidence showed that prior to the plaintiff's accident, no complaints were lodged with the defendant about *any* malfunctioning landing gear on its semitrailers. Evidence of the absence of prior accidents is relevant to show lack of notice of a dangerous condition or that the situation or defect was in fact not hazardous. *Gallick v. Novotney* (1984), 124 Ill. App. 3d 756, 759, 464 N.E.2d 846, 848.

■ A motion for a directed verdict will be granted only in cases in which all the evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Applying this standard, we conclude that the trial court properly directed a verdict for the defendant.

Plaintiff also appeals the trial court's dismissal of his products liability claim. Plaintiff charged in his amended complaint that the landing gear was "defective from long use," and that the alleged defect was the proximate cause of plaintiff's injury.

Liability in tort may extend to one engaged in commerce who supplies another with a defective product which causes injury, although he is neither the manufacturer, a seller, nor a contractor. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 617, 210 N.E.2d 182, 185.) Plaintiff argues that a defective item which is loaned by a seller as a "necessary incident" to the sale of a product falls within the doctrine of strict liability. (*Bainter v. Lamoine LP Gas Co.* (1974), 24 Ill. App. 3d 913, 916, 321 N.E.2d 744, 746; *Gilliland v. Rothermel* (1980), 83 Ill. App. 3d 116, 118, 403 N.E.2d 759, 761.) Defendant maintains that it is not liable under this extension of products liability since use of the semitrailer was not incident to the defendant's sale of the drums, but merely "a use of a convenience." *Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill. App. 3d 480, 482-83, 364 N.E.2d 502, 504-05.

The plaintiff in *Keen* was injured in defendant's grocery store when the shopping cart she was using tipped over. The court affirmed the dismissal of the products liability count. In distinguishing *Bainter*, the court in *Keen* found the shopping cart to be "only *** a convenient receptacle which the customer may temporarily utilize to move groceries," as opposed to a "necessary concomitant of the sale." *Keen*, 49 Ill. App. 3d at 482, 364 N.E.2d at 504.

■ Applying the rationale of the court in *Keen*, we find that defendant's semitrailers are not "incident and necessary" to the sale of steel drums to Valspar, plaintiff's employer. Valspar's retention of defendant's semitrailers to facilitate delivery and storage of steel drums was a mere convenience extended by the defendant. Defendant and Valspar are both users of an allegedly defective product which was placed into the stream of commerce by the parties who supplied it to defendant. Plaintiff's cause of action in products liability can only be directed against the manufacturer of the semitrailer or some party in the distributive chain other than defendant.

A cause of action should be dismissed on the pleadings only if it is clearly apparent that no set of facts can be proved which will entitle the plaintiff to recover. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504, 565 N.E.2d 654, 657.) The plaintiff's amended complaint does not set forth a set of facts upon which a cause of action can be based alleging products liability. Accordingly, we conclude that the trial court was correct in granting defendant's motion to dismiss plaintiff's products liability count.

Because of our treatment of the foregoing issues, we decline to address the other issues raised in plaintiff's brief. The judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

GORMAN and SLATER, JJ., concur.