ROGER BROOKS *et al.*, Plaintiffs-Appellants, v. ESSEX CRANE RENTAL CORPORATION *et al.*, Defendants-Appellees.

Fourth District   No. 4—92—0049

Opinion filed August 27, 1992.

Dale A. Cini, of Ryan, Cini, Bennett & Radloff, of Mattoon, for appellants.

Frederic L. Kenney, of Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On February 15, 1990, plaintiff Roger Brooks (Roger) brought suit in the circuit court of Macon County seeking money damages for personal injuries suffered by him. On March 9, 1990, plaintiff Ruth Ann Brooks (Ruth Ann), Roger's wife, joined in the suit seeking damages for loss of consortium arising from Roger's injuries. Various parties were sued. This appeal concerns counts against defendants Essex Crane Rental Corporation (Essex) and Archer-Daniels-Midland Company (ADM). On September 5, 1991, the court granted a motion by ADM, based upon a statute of limitations defense, dismissing with prejudice all counts against ADM and denied plaintiffs' alternative motion for leave to amend. On December 18, 1991, the court granted summary judgment, in bar of action, in favor of Essex and against plaintiffs. As to both orders, the court made findings pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) making both orders appealable. Plaintiffs have appealed. We reverse the orders granting Essex a summary judgment and dismissing counts against ADM in bar of action. We affirm the court's denial of plaintiffs' request to file amended counts against ADM. We remand for further proceedings.

Summary judgments are to be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) Judgment is proper when the matters properly before the court show that if the case were to go to trial, there would be no question for the trier of fact to decide, and the movant would be entitled to judgment as a matter of law. *Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 718, 506 N.E.2d 1052, 1055.

As far as the ruling on Essex' motion for summary judgment is concerned, the facts set forth below are undisputed. For a number of years prior to April 11, 1988, ADM operated a plant at Decatur and had been employing ALL-TRI-R, a corporation, as a general

contractor for various construction projects at that plant. On that day Roger was employed by ALL-TRI-R as a welder and was working at that plant. On that day, Roger and three other employees were instructed by Leonard Gordon, an ALL-TRI-R foreman, to help disassemble the jib portion of a 4000 W crawler crane leased by Essex to ADM for substantial consideration.

Plaintiffs do not dispute Essex' explanation of the term "jib" in its brief as "a series of metal, lattice work pieces which extends from the tip of the boom" and that "[t]o either lengthen or shorten the jib, it is necessary to detach sections of the jib" which "are attached to one another by four (4) metal pins (2 at the top of the jib sections and 2 at the bottom of the jib sections)." The boom was 190 feet in length. The pins involved here were designed to connect sections of the jib by being hammered in perpendicularly with the head of the pin on the outside of the jib and the tapered end on the inside of the jib. Once the pin is in place, a "keeper pin" or a "cotter key" is placed within the tapered end of the pin and bent so that the pin does not slide out. The "keeper pin" can be removed when straightened.

Roger was injured when he started to disassemble the jib before the boom and jib were placed flush on the ground. At that time, he knocked out the bottom west pin of the jib section by standing partly under the jib section and hammering the tapered part of the pin toward the outside of the jib at a time when a coemployee had already hammered out the bottom east pin. When this happened, the top pins of the jib section could not keep the bottom portion of the jib from separating and the top portion collapsed, striking Roger in the head.

■ The parties do not dispute the general rules of law applicable to any duty Essex as lessor of the crane owed to Roger. The leading case in this State on the duty of lessors of equipment to users of the equipment is *Huckabee v. Bell & Howell, Inc.* (1970), 47 Ill. 2d 153, 265 N.E.2d 134, where a plaintiff had been injured when a scaffold upon which he was standing tipped over. The court held the plaintiff there had submitted evidence sufficient to go to the jury on a count charging negligence. That plaintiff was an employee of a subcontractor who leased the scaffold from the defendant.

The *Huckabee* court noted that two prior appellate court cases dealing with the same issue had adopted

"the position taken by the Restatement of Torts, 2nd (sections 388, 395, 408 and Comments,) *** [and] held that a

bailor is liable to an injured third person if (1) he supplied the chattel in question[;] (2) the chattel was defective at the time it was supplied[;] (3) the defect could have been discovered by a reasonable inspection, when inspection is required (*i.e.*, where the danger of substantial harm because of a defect is great, as we deem it is here)[;] and (4) the defect was the proximate cause of the injury." (*Huckabee*, 47 Ill. 2d at 158, 265 N.E.2d at 137.)

In *Huckabee*, the evidence of defectiveness of the scaffold was testimony that the scaffold had moved on two prior occasions for unknown reasons. This court in *Chambliss v. Walker Construction Co.* (1964), 46 Ill. App. 2d 287, 197 N.E.2d 83, and the First District Appellate Court in *Witt v. John Hennes Trucking Co.* (1964), 49 Ill. App. 2d 391, 199 N.E.2d 231, have applied similar rules. In *Chambliss*, the court emphasized that the leasing or bailment must be one lucrative to the bailor-lessor for the above rules to be applicable.

■■ Here, Essex undisputedly supplied the crane with the jib through a bailment which was lucrative to Essex. *Prima facie* evidence that the apparatus was defective was supplied by testimony that the pins by which one jib is attached to another were arranged in such a way that the head of the pin was on the outside and the tapered end, which was inserted, was on the inside. Thus, when pounding the pins out, persons doing so had to work under the jib. Other evidence was presented that when, as here, the top pins on each side of adjoining sections were removed, the jib could buckle and fall on the person working underneath of the sections if the jib was not supported. The deposition testimony of plaintiffs' expert David MacCollum and supporting documents to that testimony as supplied by plaintiffs in opposition to Essex' motion for summary judgment indicated this situation created a defect unless the crane had upon it a noticeable flag warning of this danger. No such warning was upon the crane involved here. If the crane was defective in this regard, a trier of fact could conclude that the defect was a proximate cause of Roger's injuries.

The record was also such that a trier of fact could reasonably conclude that the danger of jibs collapsing was great enough to require a reasonable inspection. However, the heart of the dispute between plaintiffs and Essex is whether a trier of fact could have determined the danger presented by the equipment rented here by Essex to ALL-TRI-R. Essex maintains that in MacCollum's deposition he admitted that absent any warning to Essex from the manu-

facturer of the crane, the Manitowoc Company, Inc., Essex could not reasonably have learned of the alleged defect in the mechanism by which the jibs could be connected. Essex' contention is based upon the portion of MacCollum's deposition containing a colloquy which is as follows:

"Q. [Essex' attorney:] Can you think of any reason why Essex Crane Rental Corporation would have received any knowledge or information of the existence of warnings of the type shown by deposition 6 and 7?

A. [MacCollum:] I don't know what Essex received from Manitowoc, but that's their principal source of information if they buy the crane and then turn around, they have to look to—to the crane manufacturer for change orders, I mean labeling systems and improved labels and things like that, that's normally the first place that a leasing company will look.

Q. And do you have any criticisms of the leasing company which deals in Manitowoc cranes sending the cranes out to its lessees in the same condition the cranes came originally manufactured both in terms of pins and also in terms of written warnings?

A. Well, to be candid, and perfectly fair, if they knew then they had a duty. If they didn't know, then that's another thing.

Q. Okay. And when you say if they knew, if they knew of a hazard or danger?

A. If they knew of a hazard, if they, either on their own experience or had been informed. If then they—they don't alter their behavior, that's one thing. But their principal source of chain of information is from the manufacturer, whoever he may be.

Q. Do you have any knowledge or information that Essex Crane Rental Corporation, either from Manitowoc or any other source, ever was informed or notified of the hazard which is identified in your Deposition Exhibit 6 and 7?

A. I don't know. I have no information whether they did or they didn't. I don't know whether Essex had other cranes that had labels on them."

The foregoing colloquy does tend to negate plaintiffs' contention that by a reasonable inspection, Essex could have discovered the alleged defect in the crane. MacCollum's testimony would indicate that a lessor such as Essex would be very unlikely to know of the

claimed defect. Nevertheless, we conclude the question of what would be revealed by a reasonable inspection is an issue for a trier of fact.

Because a question of fact existed on a material issue, as discussed above, the court erred in granting summary judgment to Essex.

ADM's motion upon which the counts against it were finally dismissed in bar of action on September 5, 1991, was made pursuant to section 2—619(a)(5) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(5)). It alleged that the counts against it were barred by the two-year limitations period of section 13—202 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 13—202) generally applicable for bringing suits for personal injuries. The injuries to Roger were alleged to have occurred on April 11, 1988. On February 15, 1990, Roger's original complaint was filed, and on March 9, 1990, Ruth Ann joined in the complaint seeking damages for loss of consortium. Both of the pleadings were filed before the end of the two-year limitations period of section 13—202 of the Code expired on April 11, 1990, but all of the counts against ADM pending at the time of the court's dismissal of charges against ADM were amended counts filed after April 11, 1990.

At oral argument—for the first time—plaintiffs called the attention of the court and opposing counsel to the recent decision in *Hernon v. E.W. Corrigan Construction Co.* (1992), 149 Ill. 2d 190, 595 N.E.2d 561, where the supreme court held that the four-year limitations period of section 13—214(a) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 13—214(a)) provided the time limit for bringing actions for personal injuries arising from construction of improvements to real estate rather than the general provisions of section 13—202 of the Code upon which ADM relies here. ADM maintains that plaintiffs raise this theory too late for our consideration. We need not decide that question because we agree with plaintiffs that even under section 13—202, the various amendments made by plaintiffs to counts against ADM after the expiration of the two-year period are not barred.

Section 2—616(b) of the Code states:

"The cause of action *** set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended plead-

ings that the cause of action asserted \*\*\* in the amended pleading grew out of the same transaction or occurrence set up in the original pleading \*\*\*." (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(b).)

We hold that the amendments made here as to charges against ADM met the requirements of section 2—616(b) of the Code.

In *Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 125, 302 N.E.2d 64, 66, the following series of pleadings were held to create a situation where subsequent pleadings all " 'grew out of the same transaction or occurrence' " within the meaning of section 46(2) of the then Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 46(2)), which was the predecessor to section 2—616(b) of the Code. The suit was brought to recover for the death of a window washer who died on July 22, 1965, as a result of a fall from a commercial building while washing its windows. An original complaint was filed July 18, 1966, based upon violation of the Structural Work Act (see Ill. Rev. Stat. 1965, ch. 48, par. 60 *et seq.*), because of failure to provide the decedent a safe scaffold, thus necessitating the use of defective hooks to attach his safety belt to the building. A count under the Wrongful Death Act was also filed. See Ill. Rev. Stat. 1965, ch. 70, pars. 1, 2.

In *Halberstadt*, successive amendments were made to charge (1) negligent failure to provide proper exterior attachments for the decedent's safety belt, and (2) violation of the Structural Work Act by failing to provide a safe scaffold when knowing of the improper attachments for the safety belts. The supreme court stated:

"As was noted in [*Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, 287, 122 N.E.2d 540, 548], the policy attendant to statutes of limitation is to provide defendant a sufficient opportunity to investigate the factors upon which his liability may be based while such evidence is still ascertainable. (4 Ill. 2d at 289-90[, 122 N.E.2d at 549].) In the present case it is readily apparent that the cause of action set forth in the second amended complaint 'grew out of the same transaction or occurrence set up in the original pleading,' which was timely filed. Moreover, in all the pleadings the basis of defendants' liability was the alleged defective nature of the work area utilized by deceased prior to his fall. Thus defendants were informed of circumstances upon which they might predicate a defense. We conclude that the second amended complaint was properly filed." *Halberstadt*, 55 Ill. 2d at 125, 302 N.E.2d at 66.

An amendment to a complaint charging negligence in a "slip-and-fall" case after the expiration of the period of the statute of limitations was held not to be time-barred in *Wolf v. Meister-Neiberg, Inc.* (1991), 143 Ill. 2d 44, 570 N.E.2d 327. There, those defendants admitted having knowledge of the actual location of the occurrence before the expiration of the limitations period. The *Wolf* court noted that the Code was to be liberally construed when no prejudice to a party is shown.

A similar philosophy was followed by this court in *Cross v. Ainsworth Seed Co.* (1990), 199 Ill. App. 3d 910, 557 N.E.2d 906. There, we permitted the plaintiff to bring an action against a party already in the case as a third-party defendant even though the period of the statute of limitations on that action had expired earlier. We noted that the third-party defendant was well aware of the facts concerning the matter and had this information before the lapse of the limitations period. We concluded that the crucial factor was whether disregard of the statutory period was in the interests of justice. See also *Williams v. Board of Education* (1991), 222 Ill. App. 3d 559, 584 N.E.2d 257; *Trinity Bible Baptist Church v. Federal Kemper Insurance Co.* (1991), 219 Ill. App. 3d 156, 578 N.E.2d 1375.

An amended complaint was held by this court not to relate back to an original complaint in *Heyen v. Sanborn Manufacturing Co.* (1991), 223 Ill. App. 3d 307, 584 N.E.2d 841. The plaintiff there was allegedly injured when an air compressor manufactured by Sanborn Manufacturing Company and sold by a supplier to the plaintiff exploded. Count III of the original complaint charged the supplier with selling a dangerously defective product. Amended counts filed after the statutory limitations period had expired charged the supplier with (a) failing to inform the purchaser of a dangerous condition of the product when it knew or should have known of it, and (b) after having been given notice of recall, not informing the purchaser of the recall. We held the amendments did not relate back to the original complaint as the focus of the original complaint was upon the condition of the product and the focus of the amendment was on the knowledge of the supplier through its agents of the defect.

In *Weidner v. Carle Foundation Hospital* (1987), 159 Ill. App. 3d 710, 512 N.E.2d 824, the court held that a malpractice charge against a hospital for not supervising and evaluating its staff could not relate back to a charge which concerned specific negligence of an agent physician. Similarly, in *Starnes v. International Harvester*

*Co.* (1989), 184 Ill. App. 3d 199, 539 N.E.2d 1372, this court held that a count alleging invasion of privacy and intimidation could not relate back to a count based upon defamation.

Here, count V of the original complaint against ADM was similar to the original counts against Essex and charged ADM with having leased and being in possession of the crane which was unsafe for the same reasons charged against Essex. This was alleged to be a proximate cause of Roger's injuries. The first amendment filed against ADM after the expiration of the two-year limitations period was filed on June 14, 1990. Count V thereof again alleged the dangerous condition of the crane and that ADM had leased it. A new allegation was that since September 4, 1987, ADM had undertaken the responsibility to employ competent people and to inspect the crane. Count X was brought by Ruth seeking damages for loss of consortium arising from the matters alleged in count V. These counts were then further amended by plaintiffs filing further amended counts V and X on September 21, 1990. The only new aspect of these amendments was allegations that ADM had assumed the responsibility to see that competent employees would be used to operate the crane with knowledge that employees of other contractors on the premises would also be using the crane.

After the amended counts V and X were dismissed, plaintiffs, on November 17, 1990, filed amended counts XI and XII against ADM which made no substantial changes from the dismissed counts V and X. On August 1, 1991, plaintiffs filed second-amended counts XI, XIA, XIB, XIIA and XIIB against ADM. These counts added little which was new except that count XI alleged a violation of the Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*) arising from the condition of the crane. The count made the necessary allegation that ADM was in charge of the work. On September 5, 1991, the court entered the order now on appeal which granted ADM's motion to dismiss all counts in bar of action.

We conclude the situation here is more like that in *Halberstadt* than that in *Heyen, Williams* or *Starnes.* From the first pleading against ADM, a focus was placed upon the nature and condition of the crane. Subsequent pleadings did bring in a focus upon the operation of the crane at the time of the injury. However, the two matters are sufficiently interwoven that we conclude ADM will not be prejudiced in preparing its defense because of this slight change in focus.

Reconsideration of the various decisions concerning the operation of section 2—616(b) of the Code and its predecessor section

46(2) of the Civil Practice Act is not easy. The question presented is a close one, but we conclude the circuit court erred in its September 5, 1991, order dismissing the counts against ADM. Upon the dismissal of those counts, plaintiffs asked leave to amend the complaint to reinstate the original counts it had filed against ADM. Plaintiffs request we reverse the court's denial of this request only if the dismissal of the pending counts is affirmed. As we are reversing the dismissal, we affirm the portion of the order denying leave to amend.

As we have indicated, we reverse the award of summary judgment to Essex and the dismissal of the various counts against ADM. We affirm the circuit court's denial of plaintiffs' request to amend to reinstate the original counts against ADM. The cause is remanded to the circuit court of Macon County for further proceedings.

Affirmed in part; reversed in part, and remanded.

STEIGMANN and LUND, JJ., concur.